Richard B. NORTON, Individually and as Coordinator of the National States Rights Party, Joseph H. Carroll, Individually and as Youth Leader of the National States Rights Party, William Brailsford, Individually and as a candidate for the Constitutional Convention of Maryland, Robert Robusto, Individually and as a candidate for the Constitutional Convention of Maryland, the National States Rights Party, an unincorporated political organization,

v.

Ellison W. ENSOR, Chief of Police of Baltimore County and as Acting Director of Public Safety of Baltimore County.

Civ. No. 18390.

United States District Court
D. Maryland.

June 6, 1967.

William Harris Zinman, Baltimore, Md., for plaintiffs.

R. Bruce Alderman, County Solicitor, and Harry S. Shapiro, Asst. County Solicitor, Towson, Md., for defendant.

Before THOMSEN, Chief Judge, and NORTHROP, District Judge.

PER CURIAM.

Plaintiffs seek an injunction restraining defendant, the Chief of Police of Baltimore County, "from restricting the Plaintiffs and each of them from meeting or holding a public meeting, gathering, rallies or debate in any public park or other meeting place where members of the public customarily meet for conversation, consultation and exchange of information in Baltimore County," and, particularly, from holding "a meeting, gathering and/or rallies" on June 9 and 10, 1967,[1] from 7:30 to 9:00 p. m. in the public park at the rear of the Dundalk Shopping Center.

Defendant moved to dismiss the complaint for various reasons discussed below. That motion was denied at the hearing on June 2, 1967, and evidence was taken on plaintiffs' motion for a preliminary injunction and defendant's answer thereto.

Two of the plaintiffs (Brailsford and Robusto) are candidates for election as delegates to the Maryland State Constitutional Convention from the Seventh District of Baltimore County, which includes the Dundalk area. The election is scheduled for June 13, 1967. All of the individual plaintiffs except Robusto are members of the National States Rights Party, also a plaintiff, which is an unincorporated "political party, organization or pressure group," which seeks to persuade those who hold public office and the public generally to adopt its social, political and economic philosophy, and to secure the election of candidates sympathetic thereto, by means of public and private meetings, speeches and the distribution of its publications. The evidence indicates that it is a "White" racist organization, of an extreme type. Plaintiff Norton is Coordinator of the Party, plaintiff Carroll is Youth Leader of the Party, and the Party is supporting Brailsford and Robusto as candidates for election to the Constitutional Convention.

On April 13, 1967, Carroll, as Youth Director of the Party, formally requested "police cooperation" in holding outdoor political rallies on April 22 and 23, from 3:00 to 5:00 p. m. each day, in the public park to the rear of the Dundalk Shopping Center. The letter states:

"The purpose of the rallies will be to develop White political unity and to obtain signatures to help petition the recently passed Open Occupancy Law to the November '68 ballot. Also discussed will be the coming Constitutional Convention plus a general call for White political unity."

On April 17 defendant replied stating:

"First, I do not have the authority to grant a permit in any park facility. This is the responsibility of the Department of Recreation—Mr. Hubert Snyder.

"Under Section 17–12 of the Baltimore County Code, I do have the authority to issue or deny permits for public gatherings.

"Your letter indicates the purpose of this rally is to develop white politi-

---

1. At the hearing plaintiffs reduced their prayer to cover one meeting, gathering or rally on June 10, or on June 11 if the meeting scheduled for June 10 is prevented by the weather.

cal unity and obtain signatures to help petition the recently passed Open Occupancy law to the November 1968 ballot; also a general call for white political unity. This in itself gives me reason to believe that this is a racial issue and could incite our citizens to racial hate and possibly riot. Therefore, I must deny your request for a public gathering permit."

On April 18, Norton, as Coordinator of the Party, wrote defendant: "We are fortunate enough to have available private property in the same area. * * * Unless we hear to the contrary, we will begin preparations for the rallies at once." On April 26, defendant denied the request, stating: "There is a strong possibility that any demonstration or rally pertaining to racial issues could develop into a disorderly affair, and therefore, endanger the safety and welfare of the citizens of Baltimore County."

On May 7, Brailsford and Robusto wrote defendant as follows:

"We, the undersigned, are candidates for the Constitutional Convention election to be held June 13th, 1967.

"On the nights of June 9th and 10th, beginning at 7:30 p. m. and ending at 9 p. m. each night, we will conduct political rallies to promote our election.

"The rallies will be held in the Public Park just to the rear of the Dundalk Shopping Center. The Park is within our election District.

"The undersigned will speak on political matters and other candidates and concerned citizens will be allowed to speak.

"We understand that the police inspect, for safety reasons, the loudspeaking equipment. This we acknowledge but we will not be denied our right of assembly or freedom of speech. We will not submit any advance text of our speeches.

"We wish to cooperate with your Department in any manner and will discuss details with your men in the evenings when we are off from work.

"Again, *we will hold these rallies*, and will not accept any adverse ruling or flimsy last-minute excuse as reason to deny us our Constitutional Rights or interfere with our political campaign. "Thank you for your cooperation." (emphasis in original.)

On May 17, defendant replied, acknowledging the letter and stating:

"I must again inform you that under Section 17–12 of the Baltimore County Code, you are required to obtain a permit from the Police Bureau to hold any public gathering. Since I have no authority over the public parks in Baltimore County, I could not grant this permission if I so desired. In addition to this, I firmly believe that for the safety and welfare of the citizens of Baltimore County, I must deny any request from you and your organization for a permit to hold these rallies in Baltimore County."

Section 17–12 of the Baltimore County Code, referred to in defendant's letters, provides:

*"Nonprofit public gatherings.*

"(a) Any person, club, association or corporation, not operating for personal profit, who or which desires to hold any public entertainment, picnic or gathering in the county, whether or not any admission charge or collection for same is made by said person, club, association or corporation, shall make application to the chief of police of the county in such form as he shall require for a permit to hold said public gathering. Such permit shall be issued without charge and shall continue for the period of time named therein. No such permit shall be issued unless the person, club, association or corporation is deemed fit, responsible and proper to receive same, by the chief of police. Any such event which is to be held in any enclosed place shall, prior to the issuance of the permit, be referred to the buildings engineer so that he may make or cause to be made an inspection of the safety of said premises. If the buildings en-

gineer shall disapprove any premises for the holding of an event, the chief of police shall not issue the permit herein provided for even though the person, club, association or corporation applying for same be otherwise fit, responsible and proper. Nothing in this section shall be construed to require a permit for any church for the holding of religious services nor for any established fraternal, political or civic group in the holding of regular meetings. This section is intended to apply to special events and occasions which do not have regularity and permanence; provided further, that nothing in this section shall be construed to apply to gatherings or meetings held in private residences.

"(b) Any violation of this section shall be deemed a misdemeanor and any person convicted of a violation thereof shall be subject to a fine of not more than three hundred dollars or to imprisonment in jail for not more than thirty days, or both, in the discretion of the court."

Defendant testified that he is charged with a duty [2] to preserve the public peace, prevent crime and protect the rights of persons and property. In determining whether a person or an organization is "fit, responsible and proper" to receive a permit he considers various factors in each case. In these instances he was familiar with the previous activities of the applicants and the Party. Specifically, he was familiar with, and his counsel introduced in evidence, a tape recording and films of the rallies held by the Party in Patterson Park in Baltimore City in July 1966, for organization purposes, at which Norton and Carroll spoke and Brailsford handed out literature and which Robusto attended on one or more occasions. Defendant considers, and the Court agrees, that the evidence shows that speakers at those rallies incited persons in attendance to riot. Many participants in the rallies did riot, attack-

ing Negroes who lived about six blocks from the site of the rally. Photographs of such attacks were offered in evidence.

Later in the summer a similar rally was held in Princess Anne, Somerset County, Maryland, where inflammatory speeches were made but violence was averted by the arrival of a large number of State Troopers.

Defendant testified that the small park in Dundalk, at the rear of the Shopping Center, is adjacent to a public school, where children play, near the Y. M.C.A., and about one mile from a Negro community. He believes the proposed rally would endanger the life and safety of county residents and the safety of public and private property, with possible liability on the County under Article 82 (Riots) of the Annotated Code of Maryland (1957 ed., 1965 Repl.Vol.).

A. The Court overruled the points raised by defendant's motion to dismiss, for the following reasons:

■ Brailsford and Robusto, the two candidates for election, clearly have standing to bring this suit. The standing of the other plaintiffs need not be considered.

■ The failure of plaintiffs to apply to the Board of Recreation for a permit to use the park does not destroy jurisdiction in this case. It is conceded that in practice the Board of Recreation will not issue a permit for use of the park if a permit to hold the gathering has been refused by the Chief of the Police Bureau.

■ Section 602(b) of the Home Rule Charter for Baltimore County provides [3] for appeals to the County Board of Appeals from orders relating to licenses and permits. Section 604 of the Charter provides for appeals from any decision of the Board to the Circuit Court for Baltimore County, which may modify or reverse such decision if it is not in accordance with law.

2. See section 24.3 of the Baltimore County Code.

3. As permitted by Article 25A, section 5 (U) of the Annotated Code of Maryland (1966 Repl. Vol.).

Plaintiffs argue that the administrative remedy provided by those sections does not satisfy the requirements with respect to prior administrative restraint contained in Freedman v. State of Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), and other cases.[4] In reply, defendant has shown that reasonably speedy action under the Charter provisions would be possible. It will not be necessary, however, to decide in this case whether the administrative remedy provided by the Charter would be adequate and would have to be exhausted in other circumstances. For reasons stated in the next three paragraphs, we conclude ·that plaintiffs are not barred from bringing this suit at this time by their failure to appeal to the County Board of Appeals.

Plaintiffs' case is based upon two principal contentions. First, that section 17–12 of the Baltimore County Code, quoted above, violates the freedom of speech provisions of the First Amendment to the Constitution of the United States, made applicable to the States by the Fourteenth Amendment, because it provides an unreasonable and illegal prior administrative restraint, and an unconstitutionally vague test for the issuance of a permit. Second, that the refusal of the permit by defendant was arbitrary, capricious and discriminatory.

As we have seen section 17–12 provides: "No such permit shall be issued unless the person, club, association or corporation is deemed fit, responsible and proper to receive same, by the chief of police." If plaintiffs were not attacking the constitutionality of that test, but were attacking only the decision of the Chief of Police thereunder, this Court might consider that the decision of the Chief of Police involved administrative questions, or a combination of administrative and legal questions, which might require the exhaustion of administrative remedies under the principles discussed in Robinson v. Board of Education of St.

Mary's County, D.Md., 143 F.Supp. 481, 489–90 (1956), relied on by defendant herein. See Poulos v. State of New Hampshire, 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105 (1953); see also Royall v. State of Virginia, 116 U.S. 572, 6 S.Ct 510, 29 L.Ed. 735 (1886).

On the other hand, plaintiffs' first contention—that the test contained in section 17–12 is unconstitutional—presents a question of law, which the County Board of Appeals would not be author·· ized to consider, but which plaintiffs would be required to present to a court, state or federal, for decision. See the Maryland cases cited in the Robinson opinion, and United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947). See also City of Chicago v. Atchison, Topeka & Santa Fe R. Co., 357 U.S. 77, 89, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958); Public Utilities Commission v. United States, 355 U.S. 534, 539–540, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958); and 3 Davis, Administrative Law § 20.04 (1958, Supp. 1965). In Parham v. Dove, 271 F.2d 132 (6 Cir., 1959), relied on by defendant, the Court noted at the beginning of its discussion that the statute involved in that case was not unconstitutional on its face.

Jurisdiction of this federal court is properly laid under 28 U.S.C.A. § 1343 and 42 U.S.C.A. § 1983.

B. That brings us to the constitutional question. We are satisfied that under the controlling Supreme Court decisions we are required to hold that the provision in section 17–12, "No such permit shall be issued unless the person, club, association or corporation is deemed ·fit, responsible and proper to receive same, by the chief of police", is an unconstitutionally vague test, and constitutes an impermissible prior restraint upon plaintiffs' right of free speech and assembly. Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); Staub v. City of Baxley,

---

4. Quantity of Copies of Books v. State of Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964); Marcus v. Search Warrants of Property, Etc., 367 U.S. 717,

81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); United States v. 392 Copies of Magazine "Exclusive", 253 F.Supp. 485 (1966), aff'd 373 F.2d 633 (4 Cir., 1967).

355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); Superior Films, Inc. v. Department of Education, 346 U.S. 587, 74 S.Ct. 286, 98 L.Ed. 329 (1954); Gelling v. State of Texas, 343 U.S. 960, 72 S.Ct. 1002, 96 L.Ed. 1359 (1952); Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952); Kunz v. People of State of New York, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951); Niemotko v. State of Maryland, 340 U.S. 268, 71 S.Ct. 325, 95 L.Ed. 267 (1951); Terminiello v. City of Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949); Saia v. New York, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948); Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945); Martin v. City of Struthers, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943); Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943); Largent v. Texas, 318 U.S. 418, 63 S.Ct. 667, 87 L.Ed. 873 (1943); Jamison v. Texas, 318 U.S. 413, 63 S.Ct. 669, 87 L.Ed. 869 (1943); Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); Schneider v. New Jersey, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); Herndon v. Lowry, 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed. 1066 (1937); DeJonge v. Oregon, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278 (1937); Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931).

The permit under section 17–12 which Brailsford and Robusto requested defendant to issue cannot be refused because defendant does not deem them "fit, responsible and proper persons" to receive such a permit. Defendant testified that but for the proviso which the Court has found unconstitutional, he would have issued the permit, as section 17–12 requires him to do.

We will, therefore, issue a preliminary injunction requiring defendant to issue to Brailsford and Robusto a permit under section 17–12 for a meeting, gathering, or rally on June 10 (or June 11, see note 1 above) in the public park at the rear of the Dundalk Shopping Center, for the purpose specified in the application. If the Board of Recreation refuses them a permit to use the park and they apply for a permit under section 17–12 to hold their meeting, gathering or rally at some other place in Baltimore County, such a permit under section 17–12 must be issued.

C. This ruling and the injunction to be issued do not mean that plaintiffs are excused from obtaining a permit from the Board of Recreation under section 26–3(b) of the Baltimore County Code.[5] The Board of Recreation would not, of course, be justified in refusing such a permit on the ground that the issuance of the permit under section 17–12 has been denied or delayed, but the Board may consider the propriety of the proposed use of the particular park for the purposes requested, bearing in mind the guarantees of the First Amendment.

Nor does the ruling mean that plaintiffs or others are excused from applying for permits under section 17–12 whenever they desire to hold any public gathering covered by that section. The Chief of Police is entitled to know that such gatherings are to be held, so that he may take proper steps to protect persons and property. He may enforce section 17–12(b) in cases where no such permit has been sought.

Nor will the ruling and injunction prohibit defendant from taking any and all proper steps, including the arrest of

---

5. Section 26–3(b) provides in pertinent part: "The board is further authorized to develop, equip, operate and maintain and issue permits for use of any of the facilities made available to and accepted by the board for such purposes by the county or by any person, corporation or agency having jurisdiction over such facilities, and the county may transfer to the board created hereunder, functions now performed by other organizations, which may be properly performable by the board." See also Article 25A, section 5(U) of the Annotated Code of Maryland. No attack on these provisions has been made by plaintiffs, and no rules or regulations of the Board have been offered in evidence.

plaintiffs and others, if they violate provisions of law other than section 17–12. Plaintiffs have the same right of free speech as persons who propose what they oppose. But neither "White" racists nor Negro racists have the right to incite to riot, to engage in riots, to assault persons, to exhort others to engage in such assaults, to destroy or damage property, public or private, or to break other laws. If and when they do, they may be arrested and prosecuted. See City of Greenwood v. Peacock, 384 U.S. 808, 826–827, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966); Feiner v. New York, 340 U.S. 315, 71 S.Ct. 303, 95 L.Ed. 267 (1951); Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); Whitney v. People of State of California, 274 U.S. 357, 47 S.Ct. 641, 71 L.Ed. 1095 (1927); Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919); Fox v. State of Washington, 236 U.S. 273, 35 S.Ct. 383, 59 L.Ed. 573 (1915).

The ruling and injunction will not prohibit defendant and the officers serving under him from enforcing any reasonable regulation upon the use of sound amplification on streets or in public places, from enforcing the law against disturbance of the peace, or from enforcing reasonable regulations governing the use of the streets and other public facilities, subject, of course, to applicable constitutional principles. See, e. g., Cox v. Louisiana, supra, 379 U.S. at 554–555, 85 S.Ct. 453; Poulos v. State of New Hampshire, supra; Breard v. City of Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951); Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949); Saia v. New York, supra, 334 U.S. at 562, 68 S.Ct. 1148; Hague v. C. I. O., supra, 307 U.S. at 515–516, 83 L.Ed. 1423; Cox v. State of New Hampshire, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941); Davis v. Commonwealth of Massachusetts, 167 U.S. 43, 17 S.Ct. 731, 42 L.Ed. 71 (1897). See also Building Service Employees Int'l Union v. Gazzam, 339 U.S. 532, 70 S.Ct. 784, 94 L.Ed. 1045 (1950); Hughes v. Superior Court, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985 (1950); Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834 (1949); but cf. Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). Cf. also Adderley v. State of Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966).[6]

---

6. In the recent case of Cox v. State of Louisiana, the Supreme Court said:

"* * * The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. The control of travel on the streets is a clear example of governmental responsibility to insure this necessary order. A restriction in that relation, designed to promote the public convenience in the interest of all, and not susceptible to abuses of discriminatory application, cannot be disregarded by the attempted exercise of some civil right which, in other circumstances, would be entitled to protection. One would not be justified in ignoring the familiar red light because this was thought to be a means of social protest. Nor could one, contrary to traffic regulations, insist upon a street meeting in the middle of Times Square at the rush hour as a form of freedom of speech or assembly. Governmental authorities have the duty and responsibility to keep their streets open and available for movement. A group of demonstrators could not insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations." 379 U.S. at 554, 85 S.Ct. at 464.