Stephen MOORE, Jr., minor by Stephen Moore, Sr., his father and next friend, et al.

v.

BOARD OF EDUCATION OF HARFORD COUNTY et al.

Civ. A. No. 9105.

United States District Court
D. Maryland, Civil Division.

Nov. 23, 1956.

Tucker R. Dearing, Dearing & Toad-
vine, Juanita Jackson Mitchell, Robert B.
Watts, Brown, Allen & Watts, Baltimore,
Md., and Jack Greenberg, New York
City, for plaintiffs.

Edward C. Wilson, Jr., Bel Air, Md.,
and Wilson K. Barnes, Baltimore, Md.,
for defendants.

THOMSEN, Chief Judge.

This action, brought by four Negro
children seeking admission to certain
public schools in Harford County, Mary-
land, presents: (1) the usual questions
under Brown v. Board of Education, 347
U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873;
Id., 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed.
1083; (2) the same questions of law
which were raised by the defendants in
Robinson v. Board of Education, D.C.D.
Md., 143 F.Supp. 481; and (3) a prob-
lem of equitable estoppel arising out of a
previous action brought by the plaintiffs
herein and others against the defendants
herein, which was dismissed by the plain-
tiffs in reliance upon a resolution adopt-
ed by the defendants, the Board of Edu-
cation of Harford County.

### Facts

Harford County is predominately ru-
ral, but in the southern portion of the
county there are two large government
reservations, the Aberdeen Proving
Ground at Aberdeen, and the Army
Chemical Center at Edgewood. On these
reservations there are non-segregated
housing developments.

There are approximately 12,600 white
students and 1,400 Negro students in the
public schools of Harford County. The
defendant Board of Education operates a
6–3–3 system; that is, 6 years of ele-
mentary school, 3 years of junior high
and 3 years of senior high. The white
high schools, at Bel Air, Bush's Corner
(North Harford), Edgewood, Aberdeen,
and Havre de Grace, are combination
junior-senior high schools; the colored
schools, at Hickory and Havre de Grace,
are "consolidated schools", comprising
elementary, junior high and senior high
classes.

On June 30, 1955, just one month aft-
er the second opinion in Brown v. Board
of Education, the Board of Education of

Harford County selected a Citizens Consultant Committee of thirty-six members from all sections of the county, five of whom were Negroes, to consider the problem of desegregation of the public schools in Harford County and to make recommendations to the Board of Education.

On July 27, 1955, a group of Negro parents petitioned the Board of Education, calling upon them "to take immediate steps to reorganize the public schools under your jurisdiction on a nondiscriminatory basis".

The Citizens Consultant Committee held its first meeting on August 15, 1955, and was split up into a number of subcommittees, to consider facilities, transportation and social relationships respectively. A member of the staff of the Board of Education served as consultant to each sub-committee. The sub-committees met at various times during the rest of the year 1955 and the first two months of 1956.

On November 29, 1955, the four infant plaintiffs in the instant case, together with seventeen other Negro children, through their parents and next friends, brought suit in this court against the defendants herein (Civil Action No. 8615), alleging that the Board had "refused to desegregate the schools within its jurisdiction and has not devised a plan for such desegregation", and praying that:

"1. The Court advance this cause on the docket and order a speedy hearing of the application for preliminary injunction and the application for permanent injunction according to law and that upon such hearings:

"2. The Court enter preliminary and permanent judgments that any orders, customs, practices, and usages pursuant to which said plaintiffs are segregated in their schooling because of race, violate the Fourteenth Amendment to the United States Constitution.

"3. The Court issue preliminary injunctions ordering the defendants to promptly present a plan of desegregation to this Court which will expeditiously desegregate the schools in Harford County and forever restrain and enjoin the defendants and each of them from thereafter requiring these plaintiffs and all other Negroes of public school age to attend or not to attend public schools in Harford County because of race.

"The Court allow plaintiffs their costs and such other relief as may appear to the Court to be just."

On February 27, 1956, the Citizens Consultant Committee held a meeting, at which all of the sub-committees presented their final reports, and the full committee unanimously adopted the following resolution:

"To recommend to the Board of Education for Harford County that any child regardless of race may make individual application to the Board of Education to be admitted to a school other than the one attended by such child, and the admissions to be granted by the Board of Education in accordance with such rules and regulations as it may adopt and in accordance with the available facilities in such schools; effective for the school year beginning September, 1956."

On March 7, 1956, the Board of Education of Harford County adopted the resolution as submitted by the Citizens Consultant Committee.

On March 9, 1956, Civil Action No. 8615 came on for hearing before me on defendants' motion to dismiss the complaint, pursuant to Rule 12(b), Fed. Rules Civ.Proc. 28 U.S.C.A. At the beginning of the hearing, counsel for defendants advised the court that the Board of Education of Harford County had "approved or adopted" the recommendation offered by the Citizens Consultant Committee and read the resolution into the record. He then said:

"Since that plan embraces the relief prayed for, I think that takes care of that, and I want to call that to Your Honor's attention." Counsel for plaintiffs then said: "We are in a position to enter into a consent decree embodying the terms of this resolution. We would like to discuss it, but I do not think there is any need for further litigation." Counsel for the defendants replied: "I do not think that the Court should enter a consent decree when the relief prayed for is the policy adopted by the Board. I think the complaint should be dismissed in open court because there is really nothing before the Court to effectuate." I then left the bench so that counsel could discuss the matter more freely. When court reconvened the following colloquy took place:

"Mr. Greenberg: We discussed this resolution that has been adopted by the School Board and we have told counsel for the defendants that we are sure they are proceeding in good faith and this plan is acceptable to us, and we will dismiss our suit and make that a matter of record in open court, and file this.

"Mr. Barnes: That's agreeable to the defendants, Your Honor.

"The Court: I think it would be well to have the record show that in view of the fact that you have been presented with this you offered to dismiss the suit, and attach this paper as an exhibit.

"Mr. Greenberg: Yes, sir.

"The Court: I am very happy this has worked out in a very satisfactory way."

The following stipulation, signed by counsel for all parties, was filed in the case on the same day:

"Dismissal of Action

"1. This cause came to be heard in this Court on motion to dismiss the 9th day of March, 1956.

"2. Defendants, by their counsel, presented to the Court the attached Resolution of the Harford County Citizens Consultant Committee, adopted by the Harford County Board of Education, as submitted, at its regular meeting on March 7, 1956.

"3. Relying upon said resolution, as adopted, plaintiffs hereby withdraw their complaint, and pray that the same be dismissed, costs to be paid by plaintiffs."

To this stipulation was attached a certified copy of the resolution recommended by the Citizens Consultant Committee and adopted by the Harford County Board of Education.

On June 6, 1956, the Board of Education adopted the following "Transfer Policy", which all parties agree was reasonable:

"If a child desires to attend a school other than the one in which he is enrolled or registered, it will be necessary for his parents to request a transfer. Applications for transfer are available on request. These requests should be addressed to the Board of Education, c/o Superintendent of Schools, Bel Air, Maryland. Applications will be received by the Board of Education between June 15 and July 15, 1956. All applications for transfer must state the reason for the request, and must be approved by the principal of the school which the pupil is now attending.

"Applications for transfer will be handled through the usual and normal channels now operating under the jurisdiction of the Board of Education and its executive officer, the Superintendent of Schools.

"While the Board has no intentions of compelling a pupil to attend a specific school or of denying him the privilege of transferring to another school, the Board reserves the right during the period of transition to delay or deny the admission of a pupil to any school, if it deems such action wise and necessary for any good and sufficient reason.

"All applications for transfer, with recommendations of the Superintendent of Schools, will be submitted to the Board of Education for final consideration at the regular meeting of the Board on Wednesday, August 1, 1956. When requests for transfer are approved, parents must enroll their child at the school on the regular summer registration date, Friday, August 24, 1956."

The transfer policy was advertised in all newspapers published in Harford County. Sixty applications for transfer of Negro pupils were submitted within the time specified.

On August 1, 1956, the Board of Education of Harford County adopted a "Desegregation Policy", embodied in a document which recited the appointment of the Citizens Consultant Committee, the recommendation made by that Committee, the resolution adopted by the Board of Education on March 7, 1956, and the transfer policy adopted by the Board in June. The statement of Desegregation Policy continued as follows:

"The Supreme Court decision, which required desegregation of public schools, provided for an orderly, gradual transition based on the solution of varied local school problems. The resolution of the Harford County Citizens Consultant Committee is in accord with this principle. The report of this committee leaves the establishment of policies based on the assessing of local conditions of housing, transportation, personnel, educational standards, and social relationships to the discretion of the Board of Education.

"The first concern of the Board of Education must always be that of providing the best possible school system for all of the children of Harford County. Several studies made in areas where complete desegregation has been practiced have indicated a lowering of school standards that is detrimental to all chil-

dren. Experience in other areas has also shown that bitter local opposition to desegregation in a school system not only prevents an orderly transition, but also adversely affects the whole educational program.

"With these factors in mind, the Harford County Board of Education has adopted a policy for a gradual, but orderly, program for desegregation of the schools of Harford County. The Board has approved applications for the transfer of Negro pupils from colored to white schools in the first three grades in the Edgewood Elementary School and the Halls Cross Roads Elementary School. Children living in these areas are already living in integrated housing, and the adjustments will not be so great as in the rural areas of the county where such relationships do not exist. With the exception of two small schools, these are the only elementary buildings in which space is available for additional pupils at the present time.

"Social problems posed by the desegregation of schools must be given careful consideration. These can be solved with the least emotionalism when younger children are involved. The future rate of expansion of this program depends upon the success of these initial steps."

Pursuant to the Desegregation Policy so adopted, fifteen of the sixty applications were granted, and forty-five, including those of the infant plaintiffs in the instant case, were refused. On August 7, 1956, the defendant Charles W. Willis, Superintendent of Schools, sent the following letter to the parents of each of the infant plaintiffs:

"The Board of Education, at its regular August meeting, adopted a policy for the desegregation of Harford County schools. Under the provisions of this policy your child will not be allowed to transfer from his present school. Your request for

a transfer has been refused by the Board of Education.

"A copy of the desegregation policy is enclosed."

Neither the infant plaintiffs nor their parents appealed to the State Board of Education from the action of the County Superintendent denying their requests for transfer. Nor have any appeals been filed by or on behalf of any of the other Negro children whose requests for transfer were refused.

On August 28, 1956, the four infant plaintiffs by their parents and next friends filed the instant suit, pursuant to Rule 23(a) (3), "for themselves and on behalf of all other Negroes similarly situated", alleging most of the facts set out above and other facts, some of which are disputed, which need not be detailed at this time.

Infant plaintiff Moore seeks transfer from the Central Consolidated Elementary School in Hickory to the elementary school in Bel Air, where he resides; Spriggs seeks transfer from the school in Hickory to the High School (junior high) in Edgewood, where he resides; Slade and Garland seek transfer from the Havre de Grace Consolidated School to the Aberdeen High School (9th and 11th grades respectively). They pray that:

"1. The Court advance this cause on the docket and order a speedy hearing of the application for preliminary injunction and application for permanent injunction according to law and that upon such hearing;

"2. The Court enter preliminary and permanent judgments, that any orders, customs, practices and usages pursuant to which said plaintiffs are each of them, their lessees, agents and successors in office from denying to plaintiffs and other Negro residents of Harford County of the State of Maryland admission to any Public School operated and maintained by the Board of Educa-

tion of Harford County, on account of race and color." (sic)

Defendants filed a motion to dismiss the complaint pursuant to Rule 12(b), raising substantially the same points which were considered in Robinson v. Board of Education of St. Mary's County, supra. I overruled that motion on October 5, 1956. Defendants filed their answer on October 24, and the case was set for hearing on November 14. Both sides offered testimony and documentary evidence. From the testimony it appears that most, but not all, of the schools in Harford County are overcrowded if the "standards" or "goals" set out by the State are considered, namely, an average of 30 per class in elementary schools and 25 per class in secondary schools. But defendants conceded that any white children moving into the county would be admitted to the appropriate white school, however crowded. The factors considered by the Board of Education in adopting the August 1 Desegregation Policy were discussed at some length. The President of the Board of Education and the County Superintendent testified that they did not consult counsel before adopting the August 1 Desegregation Policy, but that they thought this policy was in accord with the recommendation of the Citizens Consultant Committee and with the March 7 resolution adopted by the Board.

Plaintiffs' counsel do not charge bad faith against either the Board or the Superintendent, but contend that:

"I. The Harford County School Board Resolution of March 7, 1956, meant that from the following school year and thereafter there would be no legally compelled racial segregation of school children in Harford County;

"II. The defendants are estopped from any further delay in complete integration by their action in causing plaintiffs to withdraw plaintiffs' original suit in reliance on the Board's resolution, which resolution was expressly incorporated by refer-

ence into the court's order of dismissal;

"III. Plaintiffs are entitled to judicial rather than administrative relief at this time in view of the history and facts of this case;

"A. Defendants, by their actions, are estopped from asserting the doctrine of administrative exhaustion as a defense;

"B. Even if defendants were not estopped from raising the defense of the doctrine of administrative exhaustion, the defense would nevertheless fail as the doctrine is not here applicable;

"IV. Even if defendants could validly raise the questions of necessary administrative delay, their own actions clearly demonstrate the fact that no additional time is needed to solve administrative problems;

"A. Defendants are administratively ready to effectuate desegregation;

"B. 'Community unreadiness' constitutes no legal justification for continued segregation."

## Discussion

The Maryland statutes and decisions were analyzed in Robinson v. Board of Education of St. Mary's County, supra, 143 F.Supp. at pages 487–491. I adhere to that analysis, and it need not be repeated here. It is clear that some of the factors considered by defendants in the instant case when they adopted the August 1 Desegregation Policy, and some of the points argued by counsel for plaintiffs in opposition thereto, involve administrative problems, over which the State Board of Education has jurisdiction, and which should be appealed to that Board under the Maryland authorities. Some of the other factors and points involve legal questions, which under Maryland law are for the courts. Most, if not all, involve both administrative and legal problems. Even the estoppel point is a mixed question, because the March 7 resolution leaves open at least the question of available facilities, whatever other matters may have been foreclosed.

Whether the court should attempt to segregate the legal questions and decide them at this time, or should defer any decision until the State Board has been given an opportunity to pass on the problem as an integrated whole, is a matter of comity and discretion. Since, at the time of the hearing in the St. Mary's County case, the State Board assured the court that it will give prompt attention to any appeal filed by or on behalf of Negro students, I am satisfied that I should not make a final decision in this case until the plaintiffs have appealed to the State Board from the action of the County Superintendent denying their applications for transfer. Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753; Hood v. Board of Trustees of Sumter County School District No. 2, 4 Cir., 232 F.2d 626; Carson v. Board of Education of McDowell County, 4 Cir., 227 F.2d 789; Robinson v. Board of Education of St. Mary's County, D.C.D.Md., 143 F.Supp. 481. However, the final decision in this court, if one is necessary after the State Board has acted, should be rendered within such time that the losing parties may have an appeal heard by the Court of Appeals for the Fourth Circuit at its June, 1957 term.

## Conclusions

1. The appointment of the Citizens Consultant Committee in the summer of 1955, its study, resulting in its recommendation to the Board of Education, and the resolution adopted by the Board on March 7, 1956, were a prompt and reasonable start toward compliance with the Supreme Court ruling.

2. I intimate no opinion at this time with respect to the sufficiency or propriety of the Desegregation Policy adopted by the Board on August 1, 1956.

3. I will enter a decree dismissing this action unless the plaintiffs appeal to the State Board of Education on or before December 15, 1956, from the action

of the County Superintendent refusing their applications for transfer. If plaintiffs enter such an appeal, I will stay further proceedings in this case until the State Board shall have decided the appeal or shall have delayed decision for an unreasonable time; provided that after the State Board shall have rendered its decision, or after March 1, 1957, whichever is earlier, either plaintiffs or defendants may request the court to set this case for further argument and prompt decision.