Stephen MOORE, Jr., minor by Stephen Moore, Sr., his father and next friend, Dennis Spriggs, minor by James Spriggs, his father and next friend, Roslyn Slade, minor by W. B. Slade, her father and next friend, Patricia Garland, minor by Dellas Garland, her father and next friend,

v.

BOARD OF EDUCATION OF HARFORD COUNTY, David G. Harry, Pres., Howard S. O'Neill, G. Robert Pennington, Samuel W. Galbreath, Mrs. Robert (Blanche S.) Fletcher, Charles W. Willis, Superintendent of the Schools of Harford County, Maryland.

Civ. No. 9105.

United States District Court
D. Maryland, Civil Division.
June 20, 1957.

Tucker R. Dearing, Dearing & Toadvine, Juanita Jackson Mitchell, Robert B. Watts, Brown, Allen & Watts, Baltimore, Md., and Jack Greenberg, New York City, for plaintiffs.

Edward C. Wilson, Jr., Bel Air, Md., and Wilson K. Barnes, Baltimore, Md., for defendants.

THOMSEN, Chief Judge.

This action was brought by four Negro children, on their own behalf and on behalf of those similarly situated, seeking admission to certain public schools in Harford County, Maryland. The background and first stages of the case are detailed in an opinion filed herein on November 23, 1956, D.C., 146 F.Supp. 91.

Following that opinion, the four plaintiffs and eight other children, who have asked and been granted leave to intervene in this case, filed appeals with the State Board of Education from the refusal of the Superintendent of Schools of Harford County to grant their applications for transfer from consolidated schools for colored children to various white schools which were not desegregated in September, 1956.

While those appeals were pending before the State Board, on February 6, 1957, the Harford County Board adopt-

ed the following "Extension of the Desegregation Policy for 1957–1958":

"Applications for transfers will be accepted from pupils who wish to attend elementary schools in the areas where they live, if space is available in such schools. Space will be considered available in schools that were not more than 10% overcrowded as of February 1, 1957. All capacities are based on the state and national standard of thirty pupils per classroom.

"Under the above provision, applications will be accepted for transfer to all elementary schools except Old Post Road, Forest Hill, Bel Air, Highland, Jarrettsville, the sixth grade at the Edgewood High School, and Dublin. Such applications must be made during the month of May on a regular application form furnished by the Board of Education, and must be approved by both the child's classroom teacher and the principal of the school the child is now attending.

"All applications will be reviewed at the regular June meeting of the Board of Education and pupils and their parents will be informed of the action taken on their applications prior to the close of school in June, 1957."

After a hearing, the State Board dismissed the appeals, finding that "the Harford County Board acted within the policy established by the State Board", that "the County Superintendent acted in good faith within the authority set forth in the August 1, 1956, Desegregation Policy adopted by the County Board",[1] that "the Desegregation Policy was adopted in a bona fide effort to make a reasonable start toward actual desegregation of the Harford County public schools", and that "this initial effort [the desegregation of three grades in two elementary schools] has been carried out without any untoward incidents". The State Board also took "cognizance of the resolution of the County Board of February 6, 1957", set out above herein, "as well as the testimony to the effect that the proposed Harford County Junior College, which is to be established in Bel Air in the fall of 1957, will open on a desegregated basis, and also the testimony to the effect that the present program of new buildings and additions will make further desegregation possible".

After the decision of the State Board, plaintiffs set this case for further hearing, as provided in the earlier decree, 146 F.Supp. at page 98. That hearing was held on April 18, 1957. Charles W. Willis, the Harford County Superintendent, explained and amplified the February 6, 1957 resolution of the County Board. The President of the Board and its counsel accepted that interpretation. So explained and amplified, the plan was substantially the same as the plan which was later adopted by the County Board on May 1, 1957, as follows:

"The Board reviewed its desegregation policy of February 6, 1957. In accordance with this plan, the following elementary schools will be open in all six grades to Negro pupils at the beginning of the 1957–1958 school year:

"Emmorton Elementary School

"Edgewood Elementary School

"Aberdeen Elementary School

"Halls Cross Roads Elementary School

"Perryman Elementary School

"Churchville Elementary School

"Youth's Benefit Elementary School

"Slate Ridge Elementary School

"Darlington Elementary School

"Havre de Grace Elementary School

"6th Grade at Aberdeen High School

"Schools now under construction or contemplated for construction in

1. See 146 F.Supp. at page 95.

1958, if no unforeseen delays occur, will automatically open all elementary schools to Negro pupils by September, 1959. As a result of new construction, the elementary schools at Old Post Road, Bel Air, and Highland will accept applications for transfer of Negro pupils for the school year beginning in September, 1958. Forest Hill, Jarrettsville, Dublin and the sixth grade at the Edgewood High School would receive applications for the school year beginning in September, 1959.

"As a normal result of this plan, sixth grade graduates will be admitted to junior high schools for the first time in September, 1958 and will proceed through high schools in the next higher grade each year. This will completely desegregate all schools of Harford County by September, 1963.

"The Board will continue to review this situation monthly and may consider earlier admittance of Negro pupils to the white high schools if such seems feasible. The Board reaffirmed its support of this plan as approved by the State Board of Education."

At the April, 1957 hearing, I ruled tentatively that the plan was generally satisfactory for the elementary grades, but not for the high school grades, and suggested that the parties attempt to agree on a modified plan. Conferences between counsel were held, but no agreement was reached. The County Board, however, on June 5, 1957, modified the plan as follows:

"The Board reaffirmed its basic plan for the desegregation of Harford County Schools, but agreed to the following modification for consideration of transfers to the high schools during the interim period while the plan is becoming fully effective.

"Beginning in September, 1957, transfers will be considered for admission to the high schools of Harford County. Any student wishing to transfer to a school nearer his home must make application to the Board of Education between July 1 and July 15. Such application will be evaluated by a committee consisting of the high school principals of the two schools concerned, the Director of Instruction, and the county supervisors working in these schools.

"These applications will be approved or disapproved on the basis of the probability of success and adjustment of each individual pupil, and the committee will utilize the best professional measures of both achievement and adjustment that can be obtained in each individual situation. This will include, but not be limited to, the results of both standardized intelligence and achievement tests, with due consideration being given to grade level achievements, both with respect to ability and with respect to the grade into which transfer is being requested.

"The Board of Education and its professional staff will keep this problem under constant and continuous observation and study."

The modified plan was presented to the court at a hearing on June 11, 1957. It was made clear that when an elementary school has been desegregated, all Negro children living in the area served by that school will have the same right to attend the school that a white child living in the same place would have, and the same option to attend that school or the appropriate consolidated school that a white child will have. The same rule will apply to the high schools, all of which operate at both junior high and senior high levels, as they become desegregated, grade by grade. Of course, the County Board will have the right to make reasonable regulations for the administration of its schools, so long as the regulations do not discriminate against anyone because of his race; the special provisions of the June 5, 1957

resolution will apply only during the transition period.

■ Willis also testified that the applications which will be made pursuant to the June 5, 1957 modification will be approved or disapproved on the basis of educational factors, for the best interests of the student, and not for other reasons. I have confidence in the integrity, ability and fairness of Superintendent Willis and of the principals, supervisors and others who will make the decisions under his direction. In the light of that confidence, I must decide whether the modified plan meets the tests laid down in the opinions of the Supreme Court and of the Fourth Circuit,[2] with such guidance as may be derived from other decisions.[3] The burden of proof is on defendants to show that a delay during a transition period is necessary, that the reasons for the delay are reasons which the court can accept under the constitutional rule laid down by the Supreme Court, and that the proposed plan is equitable under all the circumstances. In considering whether defendants have met that burden, the court must recognize that each county has a different combination of administrative problems, traditions and character. Many counties are predominantly rural, others suburban; some have large industrial areas or military reservations. See 146 F.Supp. at page 92.

■ Eleven out of the eighteen elementary schools in Harford County will be completely desegregated in September, 1957, three months from now. Three more will be completely desegregated in 1958, and the remaining four in 1959. The reason for the delay in desegregating the seven schools is that the county board and superintendent believe that the problems which accompany desegregation can best be solved in schools which are not overcrowded and where the teachers are not handicapped by having too many children in one class. That factor would not justify unreasonable delay; but in the circumstances of this case it justifies the one or two years delay in desegregating the seven schools.

With respect to the high schools, other factors are involved. Superintendent Willis testified that when a child transfers to a high school from another high school he faces certain problems which do not arise when he enters the seventh grade, which is the lowest grade in the Harford County high schools. After a year or so in the high schools social groups, athletic groups and subject-interest groups have begun to crystallize, friendships and attachments have been made, cliques have begun to develop. A child transferring to the school from another high school does not have the support of a group with whom he has passed through elementary school. A Negro child transferring to an upper grade at this time would not have the benefit of older brothers, sisters or cousins already in the school, or parents, relatives or friends who have been active in the P. T. A. High school teachers generally, with notable exceptions, are less "pupil conscious" and more "subject conscious" than teachers trained for elementary grades, and because each teacher has the class for only one or two subjects, are less likely to help in the readjustment. The Harford County Board had sound reasons for making the transition on a year to year basis, so that most Negro children will have a normal high school experience, entering in the seventh grade and continuing through the same school. But I was unwilling in April to approve a plan which would prevent all Negro children now in the sixth grade or above

2. Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083; Brown v. Board of Education, 347 U.S. 483, 74 S. Ct. 686, 98 L.Ed. 873; Carson v. Warlick, 4 Cir., 238 F.2d 724; Carson v. Board of Education of McDowell County, 4 Cir., 227 F.2d 789.

3. Aaron v. Cooper, D.C.E.D.Ark., 143 F. Supp. 855; Kelley v. Board of Education of the City of Nashville, M.D.Tenn., 2 Race Rel.L.Rep. 21 (1957). Cf. Mitchell v. Pollock, W.D.Ky., 2 Race Rel.L.Rep. 305 (1957).

from ever attending a desegregated high school.

However, the modified plan adopted on June 5, 1957, permits any Negro child to apply next month for transfer to a presently white high school, and if his application is granted, to be admitted in September, 1957, three months hence. This plan is different from any to which my attention has been called or about which I have read. It is an equitable way of handling the transition period. My only doubt is whether it is necessary to postpone until September, 1958, the complete desegregation of the seventh grade. But I am not charged with the responsibility of administering the Harford County public school system. Although I think the reasons given for the delay of one year are less satisfactory than the reasons given for the rest of the plan, a federal court should be slow to say that the line must be drawn here and cannot reasonably be drawn there, where the difference in time is short and individual rights are reasonably protected, during the transition period, as they are by the June 5, 1957 modification.

■ Plaintiffs are obviously worried whether the June 5 plan will be carried out in good faith, or whether it will be used as a means of postponing the admission of Negro children into the high schools without proper justification. Although, as I have said, I have confidence in Superintendent Willis and his staff, plaintiffs' doubts are not unreasonable in view of the past history of this litigation. I will, therefore, enter a decree which will spell out the rights of individual children under the plan, and will retain jurisdiction of the case, so that if any child or his parents feel that his application has been rejected for a reason not authorized by the modified plan, a prompt hearing may be granted.

There remains the question of estoppel, based upon the resolution adopted by the County Board on March 7, 1956, and the interpretation of that resolution by its counsel in open court in the earlier Harford County case, as a result of which the plaintiffs therein dismissed their action. The facts on this point are set out fully in 146 F.Supp. 93 et seq.

■ The March 7, 1956 resolution was somewhat ambiguous, but, as it was interpreted by defendants' counsel in open court, plaintiffs were justified in believing, as I did, that applications for transfer would be considered without regard to the race of the applicant. The County Board interpreted it differently in the statement entitled "Desegregation Policy" adopted on August 1, 1956; see 146 F.Supp. at page 95. I cannot accept the interpretation adopted by the County Board, but I find that it was adopted as a result of a mistake and not as the result of any bad faith on the part of the Board, the Superintendent, or their counsel. The Board adopted the Desegregation Policy of August, 1956, in the honest belief that it was to the best interests of all of the children in the County. Pursuant to that policy the Superintendent admitted fifteen Negro children to two previously white schools, but denied admission to forty-five others, including the infant plaintiffs herein.

There is grave doubt whether a governmental agency such as a county school board can be estopped from adopting a policy, otherwise legal, which it believes to be in the best interests of all the people in the County. In the instant case it would be inequitable and improper, on the ground of estoppel, to require the County Board to open all schools to Negroes immediately, as requested in the complaint. The County Board should not be foreclosed by the facts which I have found from taking such actions, and adopting and modifying such policies, as it believes to be in the best interest of the people in the County, so long as those actions and those policies are constitutional.

■ The individual plaintiffs in the earlier case, however, were prevented from pressing their individual rights in this court and on appeal by the adoption of the March 7, 1956 resolution and by what took place in this court in that

case. See 146 F.Supp. 93 et seq. Two of those infant plaintiffs are before the court in this case, and their counsel urge that their individual rights, as well as any class rights, be enforced. The reasons which prevent an estoppel against the County Board so far as its general policies are concerned, do not apply with equal force to the individual claims of those two children. It would not be equitable to delay any further the enforcement of their individual rights.

I will, therefore, include in the decree a provision enjoining the County Board from refusing to admit Stephen Moore and Dennis Spriggs to whatever school would be appropriate for them if they were white.