Alvin Dwight PETTIT, a minor, by his parent George D. Pettit

v.

BOARD OF EDUCATION OF HARFORD COUNTY, David G. Harry, Jr., President, Howard S. O'Neill, Mrs. Jason T. Pate, Samuel W. Galbreath, Mrs. Robert (Blanche S.) Fletcher, Charles W. Willis, Superintendent of Schools of Harford County.

Civ. No. 11955.

United States District Court
D. Maryland.

May 25, 1960.

Jack Greenberg, New York City, and Tucker R. Dearing and Juanita Jackson Mitchell, Baltimore, Md., for plaintiff.

Wilson K. Barnes, Baltimore, Md., for defendants.

THOMSEN, Chief Judge.

This case presents the questions: (1) whether the plan for the desegregation of the public schools of Harford County, adopted by defendant Board of Education and approved in Moore v. Board of Education of Harford County, D.C., 152 F.Supp. 114, affirmed Slade v. Board of Education, 4 Cir., 252 F.2d 291, certiorari denied 357 U.S. 906, 78 S.Ct. 1151, 2 L.Ed.2d 1157, is still equitable, or should now be disapproved; (2) whether, under the plan, the infant plaintiff was properly denied admission to the eighth grade of the Aberdeen High School in October 1958 and to the ninth grade of that school in September 1959; and (3) whether this Court should require defendants to admit the infant plaintiff to the tenth grade of the Aberdeen High School in September 1960.

### Facts.

The history of the development, adoption and modification of the plan by the County Board and the reasons for the approval of the plan by this Court are set out in the Moore case, 146 F.Supp. 91, 92–96 and 152 F.Supp. 115–119; they need not be repeated here. A brief statement of how the plan has operated will suffice.

For many years Harford County has been divided into two sets of school districts. Before the adoption of the plan of desegregation a white child was required to attend the white elementary school in the district in which he lived and the junior-senior high school which received children from his district. Transfers were permitted or required when children moved from one district to another; otherwise transfers were rare and for cause. A colored child attended the appropriate colored school— one of the two "consolidated" schools at Hickory and at Havre de Grace—which have elementary, junior high and senior high classes.

Under the modified plan, approved by this Court and by the Fourth Circuit, all the elementary schools have now been desegregated; desegregation of the high

schools reached the eighth grade in September 1959 and will reach the ninth grade in September 1960. A negro child now has the same right to attend the elementary school serving the area in which he lives that a white child living in the same place would have, and the same option to attend either that school or one of the consolidated schools. A child, Negro or white, graduating from an elementary school or completing the sixth grade at one of the consolidated schools may enter the high school serving the district in which his home is located, or, if he prefers, may enter or continue at the consolidated school. Some Negro children have entered the elementary schools and the high schools; most have elected to attend the consolidated schools. There are now six Negro children in the seventh grade at the Aberdeen High School and three in the eighth grade.

Aside from children completing the sixth grade at one of the consolidated schools, no child, Negro or white, having entered one school may transfer to another except in accordance with rules adopted by the Board. No problem with respect to the transfer of Negro children in elementary grades has been brought to my attention. The following rule, adopted in June 1957 and approved by this Court and by the Fourth Circuit in the Moore case, governs "consideration of transfers to the high schools during the interim period while the plan is becoming fully effective."

"Beginning in September, 1957, transfers will be considered for admission to the high schools of Harford County. Any student wishing to transfer to a school nearer his home must make application to the Board of Education between July 1 and July 15. Such application will be evaluated by a committee consisting of the high school principals of the two schools concerned, the Director of Instruction, and the county supervisors working in these schools.

"These applications will be approved or disapproved on the basis of the proba-bility of success and adjustment of each individual pupil, and the committee will utilize the best professional measures of both achievement and adjustment that can be obtained in each individual situation. This will include, but not be limited to, the results of both standardized intelligence and achievement tests, with due consideration being given to grade level achievements, both with respect to ability and with respect to the grade into which transfer is being requested." See 152 F. Supp. 117, et seq.

A number of Negroes have applied for transfers under that rule; some applications have been granted and some denied.

The infant plaintiff was born in September 1945. His family lived in Baltimore County, and he attended the Sparrows Point (colored) Elementary School through the fifth grade. He passed the sixth and seventh grades in the Sollers Point High School, which serves principally the Negro population in the Dundalk area of Baltimore County,[1] and entered the eighth grade of that school in September 1958. On October 1, 1958, the Pettit family moved to a home in the unsegregated Wherry Housing Project at Aberdeen, in Harford County. The father is employed by the government as an electronic scientist, supervising other employees of both races. Pettit wanted his son to enter the eighth grade at the Aberdeen High School, but the principal of that school referred him to the Director of Instruction of the Harford County Schools, who told him that his son would have to attend the Havre de Grace Consolidated School during the then current year 1958–59 and make application for transfer to the Aberdeen High School in July 1959. Pettit was dissatisfied, but on the advice of a lawyer decided to follow those instructions. He testified that the curriculum at the consolidated high school was inadequate, and that he was disgusted with the way his child was taught at that school. When pressed, he stated on the stand that he wished to rely on his complaint that

1. The Baltimore County Schools are now desegregated.

the curriculum was inadequate, as compared with the curriculum at the Aberdeen High School, but that he did not contend the teachers were inferior to those at Aberdeen. The differences between the curricula will be discussed below.

In July 1959 Pettit filed an application to transfer his son to the Aberdeen High School and gave as the reason, "for the advantages of the pupil in his preparation for higher education". Four other applications to transfer Negro children to grades nine to twelve in that school were filed. All of the applications were considered together by the Committee provided for in the interim rule quoted above; three were approved and two, including Pettit's, were disapproved. An application to transfer a Negro child to the eighth grade was approved at the same time.

The Committee had before it the record of the infant plaintiff at Sollers Point in 1956–57 and 1957–58 and at Havre de Grace in 1958–59. At the latter school he received "C" (Fair) in three subjects, "B" (Good) in two, and "A" (Excellent) in music. The only test results the Committee had were (1) a California Achievement test taken in February 1956, while the infant plaintiff was in the fifth grade, which showed a grade equivalent of 5.4, as against a norm of 5.5, and (2) an intelligence test taken in October 1957, which showed an IQ of 90. The Committee did not give or cause to be given any up-to-date tests.[2] The Committee did not consider the test results to be exact measures of intelligence or achievement but treated them as guides. The Director of Instruction, who served as Chairman of the Committee, testified that the Committee also considered the recommendation of the principal of the Havre de Grace Consolidated School, but no record was made of that recommendation, and he did not remember exactly what it was. The principal testified before the State Board of Education that he had recommended against the transfer. The Committee's reason for disapproval of Pettit's application, as stated in its report, was "lack of ability and low achievement, as evidenced by standardized test scores and school progress reports".

The County Board of Education accepted and approved the recommendation of the professional committee, and the County Superintendent wrote Pettit: "Your transfer request is therefore disallowed."

Pettit appealed to the State Board of Education under art. 77, sec. 144, Anno. Code of Md., 1957 ed. The State Board granted a hearing, after which it filed an opinion and order, which concluded as follows:

"Section 5 of the Moore decree provides that applicants in young Pettit's class must fulfill special qualifications 'to be adjudged by a committee consisting of the principals of the schools from which the pupil is transferring and the school to which he desires to transfer, the Director of Instruction and the county supervisors working in these schools.' Such a committee met to consider the Pettit application and denied it.

"Upon close examination, we conclude that as the decree is now formed, it has constituted the foregoing committee as an arm of the Court. No power over the assignment of pupils apply under the decree is vested in the County Superintendent. Were he to countermand the committee's decision, his action would be invalid and would have to be set aside as violative of the decree, without any examination of the merits of the controversy.

"The jurisdiction of this Board under Article 77 of the Annotated Code of Maryland, Sec. 150, extends to appeals from decisions of the County Superintendent. In the instant case, there was no decision of the County Superin-

2. It is noteworthy that the infant plaintiff took an intelligence test in September 1959 in Baltimore, which showed an IQ of 103, a shade above the median IQ of students in the Aberdeen High School.

tendent, nor could there have been one. There was merely a decision of a professional committee acting as an arm of the Court.[1]

"As the jurisdiction of this Board is limited to appeals from decisions of the County Superintendents, it follows that it lacked the power to review the decisions of the professional committee created by the Court.

"For the aforegoing reason, this appeal is hereby dismissed without prejudice to Appellant's reapplication for transfer at a subsequent time between dates set forth in the Court's decree."

Meanwhile, because of his dissatisfaction with the curriculum at the Havre de Grace Consolidated School, which did not offer an academic course—algebra and a foreign language—in the ninth grade, Pettit sent his son to the William H. Lemmel Junior High School, in Baltimore. Like all Baltimore City schools that school is desegregated, but because of its location almost all of the pupils are Negroes. Pettit had to pay $255 for one year's tuition, because he did not live in Baltimore City, and he had to pay for his son's board and lodging in Baltimore.

A standard intelligence test, which the infant plaintiff took in September 1959, showed an IQ of 103. His reading level was 7.9, his arithmetic level 7.2. The median IQ in the ninth grade at the Aberdeen High School is 99: that of the pupils taking the academic course about 108, that of the pupils taking the general course just over 90. The results of the achievement tests, which are slightly different from those given at the Lemmel School, vary for the five sections of the ninth grade from 10.5 to 9.4 in the academic sections and from 7.9 to 7.4 for those taking the general course.

The marks of the infant plaintiff at the Lemmel School have been only fair, but he is attending his third school in three years and is living away from home. He has been elected to the student council and is now president of his class and chief justice of the school court.

### Discussion.

#### (1).

Plaintiff's first contention is "that since the entry of the decree of this court in the Moore case approving a stair step integration plan for the High Schools of Harford County circumstances have so changed that there are no longer any equitable considerations entitling defendants to postpone the constitutional rights of the complainant and others similarly situated".

The evidence does not show any change of circumstances, and plaintiff did not seriously attempt to prove any such change. The modified plan is set out in detail in 152 F.Supp. at pages 116–117 and the reasons for the adoption of the plan are set out at pages 118–119. Those reasons still obtain. The plan has worked well. All Harford County schools are now desegregated through grade eight, they will be desegregated through grade nine in September 1960, and will be completely desegregated by September 1963. Some Negro children have elected to enter formerly white schools; some have been transferred to such schools under the plan; most have elected to attend the consolidated schools. The provisions "for the transfer of qualified students in high school grades pending the final elimination of segregation in those grades", see 252 F.2d 291, apply only during the transition period. Thereafter, Negro children will be able to *transfer* to another high school on the same basis as white children, as they now have the right to *enter* a high school on the same basis.

In deciding whether the plan should still be approved, this court must consider the recent statement of the Fourth Circuit in Jones v. School Board of City of Alexandria, 278 F.2d 72, at page 76: "Obviously the maintenance of a dual

---

1. "The committee's action was, to be sure, approved by the County Board of Education. However, as such review was not provided for in the decree, we believe that the Board's action may properly be disregarded for purposes of this decision.

system of attendance areas based on race offends the constitutional rights of the plaintiffs and others similarly situated and cannot be tolerated. It is not mentioned in the plan of the Alexandria School Board, and we may assume, in the absence of more evidence than the activation of the plan in the present record affords us, that the continuance of the dual system is not contemplated. In order that there may be no doubt about the matter, the enforced maintenance of such a dual system is here specifically condemned."

In Harford County, as in many other Maryland counties, there are now two sets of attendance areas, which were originally based on race. Each child, Negro or white, lives in what was formerly a white district served by a particular elementary school, and also in what was formerly a colored district served by a particular school. Before desegregation the white child was required to enter the white school serving his district, the Negro child the appropriate colored school. Now, however, the Negro child may enter either school—the formerly white school serving the district in which he lives or the formerly colored consolidated school serving a somewhat wider district. A white child has exactly the same option. No tests or other "factors" are prescribed or considered in admitting either Negro or white children to the several schools. In the Moore case, this Court said: "It was made clear that when an elementary school has been desegregated, all Negro children living in the area served by that school will have the same right to attend the school that a white child living in the same place would have, and the same option to attend that school or the appropriate consolidated school that a white child will have. The same rule will apply to the high schools, all of which operate at both junior high and senior high levels, as they become desegregated, grade by grade. Of course, the County Board will have the right to make reasonable regula-

tions for the administration of its schools, so long as the regulations do not discriminate against anyone because of his race; the special provisions of the June 5, 1957 resolution will apply only during the transition period." 152 F. Supp. at pages 117–118, affirmed 252 F.2d at pages 291–292. The County Board may make reasonable regulations governing the transfer to another school of a child who has already entered one school, provided those regulations are made for proper administrative or educational reasons, and do not discriminate against anyone because of his race.

So applied, as it has been in Harford County and in many other Maryland counties with respect to all grades which have been desegregated, such a system does not violate the principles announced by the Supreme Court. Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083; Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5; School Board of City of Charlottesville, Va. v. Allen, 4 Cir., 240 F.2d 59; Briggs v. Elliott, D.C., E.D.S.C., on remand, 132 F.Supp. 776. The experience in Maryland, including Baltimore City,[3] shows that different individuals, both Negro and white, desire different educational experiences. Some Negro parents have sent their children to predominantly white schools; a majority have sent their children to schools which are entirely or predominantly colored. Many white parents have enrolled their children in schools where a few or many Negroes have enrolled, although they could have sent them elsewhere. The evidence in this case shows that there are at least two white children in the Lemmel Junior High School in Baltimore, where all the other pupils are colored. The ratios vary from county to county, as would be expected in a state so diverse as Maryland. The people of Maryland believe in such freedom of choice. It has produced constantly increasing desegregation of both public and private facili-

---

**3.** Where the schools were completely desegregated immediately after the first opinion of the Supreme Court in Brown.

ties. See Slack v. Atlantic White Tower System, D.C., 181 F.Supp. 124.[4]

In School Board of City of Charlottesville, Va. v. Allen, supra, the Fourth Circuit quoted with approval the apt language of Judge Bryan in one of the cases then under consideration: "It must be remembered that the decisions of the Supreme Court of the United States in Brown v. Board of Education, 1954 and 1955, 347 U.S. 483 (74 S.Ct. 686, 98 L. Ed. 873) and 349 U.S. 294 (75 S.Ct. 753, 99 L.Ed. 1083) do not compel the mixing of the different races in the public schools. No general reshuffling of the pupils in any school system has been commanded. The order of the Court is simply that no child shall be denied admission to a school on the basis of race or color. Indeed, just so a child is not through any form of compulsion or pressure required to stay in a certain school, or denied transfer to another school, because of his race or color, the school heads may allow the pupil, whether white or Negro, to go to the same school as he would have attended in the absence of the ruling of the Supreme Court. Consequently, compliance with that ruling may well not necessitate such extensive changes in the school system as some anticipate." 240 F.2d at page 62.

The passage quoted from Jones v. School Board of Alexandria, supra, must be read in the light of the criteria considered by the Alexandria Board in the assignment of pupils and of the other factors referred to in that opinion. It should not be read as condemning the system now prevailing in the elementary grades in Harford County and which will prevail in all grades at the end of the transition period, *provided* that system is so administered that there will be in fact no discrimination of any kind between Negro children and white children in their admission to any school in the county or in their transfer from one school to another.

Plaintiff has not shown that the plan for the desegregation of the schools of Harford County, which was approved by this Court and by the Fourth Circuit, should now be disapproved.

### (2).

Should the infant plaintiff have been admitted to the eighth grade of the Aberdeen High School in October 1958 and to the ninth grade of that school in September 1959?

The Pettit family moved to Harford County in October 1958. The infant plaintiff was then attending the eighth grade in a high school in Baltimore County, and sought admission to the eighth grade in the Aberdeen High School, which served the district in which he lived. If he had been one year younger, he would have been admitted as of right to enter the seventh grade at that school, but the Director of Instruction ruled that the infant plaintiff was required to attend the Havre de Grace Consolidated School. At that time the Aberdeen High School offered an academic curriculum, a commercial curriculum and a general curriculum. There was no academic curriculum at the Havre de Grace Consolidated School. Such a curriculum was started there in grade ten in 1959–60; it begins in grade nine at Aberdeen. Since the infant plaintiff's father wished him to take the academic curriculum, to prepare him for higher education, it is obvious that the curriculum at the Consolidated School was not equal to the curriculum at the Aberdeen High School. Under the law as it stood before Brown v. Board of Education the infant plaintiff would have been entitled to relief under the separate but equal doctrine; under the law as it stands since Brown, the inequality of the curricula entitled him to admission to the Aberdeen High School unless there were overwhelming equitable considerations to justify the denial of such relief. Groves v. Board of Education of St. Mary's County, Md., D. C., 164 F.Supp. 621, 625, affirmed 4 Cir., 261 F.2d 527, 530. No such overwhelming equitable considerations exist in this

---

4. Since the Slack case the restaurants in the leading department stores in Balti-
more have been desegregated, with a minimum of difficulty and no arrests.

case. The infant plaintiff should have been admitted to the eighth grade of the Aberdeen High School in October 1958.

This decision makes it unnecessary for this Court to review the action of the Committee, the Board and the Superintendent on the application for transfer filed in July 1959. However, I wish to make it clear that I do not agree with plaintiff's witness, brought down from New York, that the Committee acted without any reasonable basis in refusing the transfer. His reasons for that opinion were not convincing. He later testified that the infant plaintiff was "not out of the range of consideration" for the academic curriculum at Aberdeen. I agree with the latter statement. The application presented the Committee with a border-line case, which could reasonably have been decided either way. The conclusion of the Committee might have been different if the Committee had given intelligence and achievement tests to the infant plaintiff and if the results had been the same as in the tests given at the Lemmel School in Baltimore the next month. In future border-line cases, up-to-date test results should be obtained.[5]

▮ In passing, it should be noted that I do not agree with the conclusion of the State Board that the Committee is "an arm of the Court". The decree in the Moore case approved and gave effect to the plan of desegregation as adopted and modified by the County Board. That plan established the Committee and the criteria upon which it should act in making its "evaluations". The several applications for transfer were approved or disapproved by the County Board, and the formal rulings were communicated to the applicants by the County Superintendent. Under the Maryland statutes and decisions an appeal lies to the State Board of Education from such action with respect to any administrative problems involved, although legal questions may be taken

immediately to the courts. See Robinson v. Board of Education of St. Mary's County, Md., D.C.D.Md., 143 F.Supp. 481, where the Maryland statutes and decisions are fully discussed. Of course, many problems involve both administrative and legal questions, and this Court decided in Robinson and in Moore that it was generally desirable, as a matter of comity and discretion, for a federal court to defer decision until the State Board has been given an opportunity to pass on such a problem. In the instant case, the administrative and educational questions involved in the "evaluation" made by the Committee, and in the decision made by the County Board and the Superintendent on the July 1959 application, were matters which could better be decided by the State Board than by this Court leaving to the courts the legal questions involved.

I hope that the State Board will be willing to pass on such administrative and educational questions in the future; otherwise it would be futile for this Court to continue to insist that applicants appeal to the State Board before seeking relief in this Court.

### (3).

▮ The question remains what relief should be granted—whether this Court should require defendants to admit the infant plaintiff to the tenth grade of the Aberdeen High School in September 1960.

I have found that the infant plaintiff should have been admitted to the eighth grade of the Aberdeen High School in October 1958. Because he was not so admitted, and because of his father's dissatisfaction with the curriculum at the Consolidated School, the boy has spent his three junior high years at three different schools, in the seventh grade at Sollers Point, the eighth at Havre de Grace Consolidated, and the ninth at the Lemmel Junior High in Baltimore. He

5. If the infant plaintiff had been admitted to the Aberdeen High School in 1958 or 1959, the principal of that school and others in authority would have had the undoubted right to assign him, like any other child, to the proper grade and the proper curriculum under rules or decisions made and applied for educational or administrative reasons and not because of the child's race.

will have to enter another school in September 1960, since the junior high schools in Baltimore do not go beyond the ninth grade. His IQ is adequate for the academic curriculum at Aberdeen or anywhere else in Maryland. His achievement has not been anything like so good, for a great variety of reasons, some of which would militate against his success in the academic curriculum at Aberdeen and some of which would not. It is hard to tell how much he has matured, and how well he would do in the tenth grade of the academic course, in the tenth grade of the general course, or in any other grade or curriculum at Aberdeen or elsewhere.

The second opinion of the Supreme Court in Brown requires district courts to weigh the equities and to adjust and reconcile public and private needs. Groves v. Board of Education of St. Mary's County, Md., 164 F.Supp. at page 625. On appeal in the Groves case the Fourth Circuit said: "Undoubtedly the District Judge should not take the formulation of a plan for the integration of the schools out of the hands of the school authorities but, on the other hand, he may not disregard his own responsibility to determine not only whether a plan is offered in good faith but whether it is reasonable in all its aspects; and this includes the duty to determine whether an exception to the plan in a given case should be made." 261 F.2d at page 530.

Under all the circumstances, the infant plaintiff is entitled to the chance to make good in the tenth grade of the academic curriculum at the Aberdeen High School if he wishes to take that chance. Of course, the principal and the faculty of that school should advise him whether he should enter the academic or the general course, and if he chooses the academic course, whether it would be wiser for him to enter the ninth grade or the tenth grade. If he decides to enter the tenth grade of the academic course, or to enter some other grade or course, the question whether his work justifies his continuation in that class or requires his transfer to some other class is for the school authorities, to be decided by them without regard to the race of the infant plaintiff. Once again I express my confidence in the good faith and ability of the Superintendent and the staff of the Harford County school system.

I will sign a decree appropriately worded to require defendants to admit the infant plaintiff to the Aberdeen High School at the beginning of the 1960–61 school year, to the same grade and course as white children similarly situated, and according to the same procedure that white children are admitted to that school. The principal of the Aberdeen High School or other appropriate personnel may counsel the infant plaintiff to pursue such course of studies as, in the regular operation of the school, they would counsel white children similarly situated to pursue. He will be required to conform to such advice to the same extent that white children similarly situated are required to conform. At no time shall he be assigned to a course of study, graded, promoted or demoted, except in accordance with the regular policy of the school to assign, grade, promote, or demote white children similarly situated.